## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ALFRED WOODS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:19-01122-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security***, | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alfred Woods brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Woods has also challenged the Commissioner's refusal to grant his motion to reopen prior benefits applications. *See* 20 C.F.R. §§ 404.988, 416.1488. Upon due consideration of the parties' briefs (Docs. 12, 13, 15, 22)[2] and those portions of the transcript of the administrative record

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] Woods filed a reply brief on May 21, 2020 (Doc. 22), in contravention of the Court's May 11, 2020 order stating that this case was being "taken under submission on the

(Doc. 11) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**, and that Woods's challenge to the Commissioner's refusal to reopen his prior applications is due to be **DISMISSED without prejudice**.[3]

## I.    *Procedural Background*

Woods filed the subject SSI application with the Social Security Administration ("SSA") on January 10, 2017, and the subject DIB application on January 12, 2017. After they were initially denied, Woods requested, and on July 12, 2018, received, a hearing on his applications before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On January 25, 2019, the ALJ issued an unfavorable decision on Woods's applications, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 11, PageID.52-66).

Woods had prior DIB and SSI applications denied in 2012 and 2015. (*See id.*, PageID.100-136). On May 31, 2018, while his subject applications were still pending before the ALJ, Woods submitted a motion to reopen those prior applications. (*Id.*,

parties' briefs and the administrative record[, with] no further submissions related to the issues raised [to] be filed unless (1) the submission is in accordance with S.D. Ala. CivLR 7(f)(3), or (2) the proponent obtains leave of court for good cause shown." (Doc. 21). Nevertheless, in the exercise of discretion, the Court permitted the reply brief and allowed the Commissioner an opportunity to file a surreply to the reply. (*See* Doc. 23). The Commissioner declined the opportunity.

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings, order the entry of judgment, and conduct all post-judgment proceedings in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 20). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 19, 21).

PageID.314). The administrative transcript does not reveal the disposition, if any, of that motion.

The Commissioner's decision on Woods's 2017 applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on October 25, 2019. (*Id.*, PageID.41-45). Woods subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir.

2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial

evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[5] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*,

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is

---

185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').");  *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as

"[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is under a disability, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), which means that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC")

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

> assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's]

medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Woods met the applicable insured status requirements through December 31, 2017, and that he had not engaged in substantial gainful activity since the alleged disability onset date of September 20, 2015.[8] (Doc. 11, PageID.58). At Step Two,[9] the ALJ determined that Woods had the

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See*

following severe impairments: intellectual disability, diabetes mellitus, history of foot abscess, obesity, and hypertension. (Doc. 11, PageID.58). At Step Three,[10] the ALJ found that Woods did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 11, PageID.58-60).

At Step Four,[11] the ALJ determined that Woods had the residual functional

---

*also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[11] At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step...20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude    that    the    claimant    is    not    disabled.    20    C.F.R.    §

capacity (RFC) "to perform exertion light work as defined in 20 CFR 404.1567(b) and 416.967(b),[12] except [Woods] can engage in occasional pushing and/or pulling of foot controls with the left lower extremity[;] can never climb ladders or scaffolds[;] must avoid all exposure to unprotected heights[;] is limited to the performance of simple tasks[;] can tolerate occasional changes in a routine work settting[;] should

---

> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

not be [assigned] production rate based jobs such as assembly line work, but …
could perform goal-oriented work such as office cleaner[; and] would require a
sit/stand option with the ability to alternate sitting with standing and/or walking in
30-minute increments throughout the day while remaining on task." (Doc. 11,
PageID.60-64). Based on the RFC, the ALJ determined that Woods was unable to
perform any past relevant work. (*Id.*, PageID.64).

At Step Five, after considering testimony from a vocational expert,[13]  the ALJ
found that there existed a significant number of jobs as a garment sorter, folder,
and hand finisher in the national economy that Woods could perform given his RFC,
age, education, and work experience. (Doc. 11, PageID.65-66). Thus, the ALJ found
that Bryant was not disabled under the Social Security Act during the adjudicatory
period relevant to her applications. (*Id.*, PageID.66).

## IV.   *Analysis*

### a.   **Medical Opinions**

Woods first argues that the ALJ reversibly erred in assigning only partial
weight to the medical opinions of two consultative examining psychologists, Drs.
Donald Blanton and John Goff. The undersigned disagrees.

" 'Medical opinions are statements from physicians and psychologists or other

---

[13] "[T]he ALJ may determine whether the claimant has the ability to adjust to other
work in the national economy … by the use of a vocational expert. A vocational
expert is an expert on the kinds of jobs an individual can perform based on his or
her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will
pose hypothetical question(s) to the vocational expert to establish whether someone
with the limitations that the ALJ has previously determined that the claimant has
will be able to secure employment in the national economy." *Phillips*, 357 F.3d at
1240.

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished); *accord Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 751 (11th Cir. 2018) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to

different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[14]

"The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). On the other hand, the opinions of non-treating physicians, such as those of Drs. Blanton and Goff, "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord, e.g.*, *Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight."). An ALJ "may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), or "substitute[] his judgment of the claimant's condition for that of the medical and vocational experts." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam). "But ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 n.1 (11th Cir. 2020) (per curiam) (unpublished). An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion[,]" *Bloodsworth*, 703 F.2d at 1240, and a court "will not second guess the ALJ about the weight [even

---

[14] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject applications. *Compare* 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017).

a] treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

Dr. Blanton performed a consultative psychological evaluation of Woods on February 23, 2017. (Doc. 11, PageID.323-325). As noted by the ALJ, Dr. Blanton determined that Woods had a full scale IQ score of 50, placing him in the moderate range of intellectual disability. Dr. Blanton assessed "no psychomotor retardation or agitation was present[,]" and that Woods's "judgment was fair for work and financial type decisions." Dr. Blanton "determined that the score was a valid assessment of [Woods's] current level of intellectual functioning" and that Woods's "functional adaptation problems likely manifested prior to age 22 in the areas of communication, education, and employment." The ALJ observed, however, that Dr. Blanton "failed to identify any specific functional limitations." (*Id.*, PageID.59-60, 62).

Dr. Goff performed his psychological evaluation of Woods on June 6, 2018. (*See id.*, PageID.497-504). As the ALJ noted, Dr. Goff assessed Woods with a full scale IQ score of 52, concluding that he was "functioning in the intellectually disabled range of psychometric intelligence" and noting there were "numerous indications for adaptive skills deficits with specific indications for deficits related to functional academics and economic activity because of his inability to read, write or perform mathematical calculations at an adequate level." Dr. Goff opined that Woods's IQ score "strongly implies severe impairment related to cognitive deficits[,]"

that Woods "does not read well enough to manage aspects of day-to-day affairs[,]" and that Woods had "both extreme and marked limitations in [his] ability to perform routine work on a sustained basis." (*Id.*, PageID.62-63).

The ALJ assigned only partial weight to the opinions of Drs. Blanton and Goff, explaining:

> The records documents [sic] a long work history that reflects high adaptive functioning. Dr. Goff states that the claimant does not read well enough to manage aspects of day-to-day affairs. Ironically, the claimant has managed to maintain a job on a consistent basis. He was also successfully self employed. He was able to raise and pick okra and prepare the okra for sell [sic] at the market. While his work may have been performed at the unskilled level, it negates Dr. Goff's opinion of him not being able to manage aspects of his daily life … [T]he claimant may have difficulty in intellectual functioning. However, the evidence of record clearly reflects high adaptive functioning, as he has a driver's license and drives and maintained consistent employment over multiple years. Even more, he indicated that he stopped worked [sic] because the plant closed.

(Doc. 11, PageID.63).

The Eleventh Circuit Court of Appeals has recognized that "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). For instance, in *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam), the Eleventh Circuit upheld a determination that the claimant's intellectual impairments were not disabling "where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an

administrative clerk, statistical clerk, and an algebra teacher…" *Lowery*, 979 F.2d at 837.

Similarly, the ALJ here reasonably found that "other evidence in the record on [Woods]'s daily activities and behavior" was inconsistent with the two psychologists' IQ assessments and opinions. As the ALJ noted, Woods "testified that he drives about five times a week and even drove himself to the hearing[,]" and was able to pass "the oral test for his driver's license." (Doc. 11, PageID.61). The ALJ also noted Woods's "consistent employment" through past unskilled work as a truck farmer, fish cleaner, and lumber stacker,[15] and that Woods reported he stopped working his last job "because the plant shutdown[,]" rather than because of any impairment. The Eleventh Circuit recognizes that, "absent evidence of sudden trauma that can cause retardation, … IQ tests create a rebuttable presumption of a fairly constant IQ throughout … life." *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). There is no indication in the record that any such sort of sudden trauma in the record during the time he was working.[16] Accordingly, the ALJ could reasonably presume that Woods had the same IQ assessed by the psychologists as when he was working, and therefore conclude that his IQ did not preclude him from

---

[15] Though the vocational expert described the truck farmer job as skilled, the ALJ appeared to accept Woods's testimony that he performed it at an unskilled level. (*See* Doc. 11, PageID.64). Moreover, the ALJ found that Woods was unable to perform this past work even at the unskilled level and proceeded to Step Five. Thus, Woods's complaint that "[t]here is no evidence to support the vocational expert's testimony regarding Mr. Woods' past relevant work as a farmer" (Doc. 13, PageID.522) is at most harmless error.

[16] While Woods did report to Dr. Goff that he had been kicked in the head by a horse, that occurred when he was six or seven years old. (Doc. 11, PageID.499).

performing any work.

In sum, substantial evidence supports the ALJ's decision to only give partial weight to the medical opinions of Drs. Blanton and Goff.

### b.    Listing 12.05B

Woods next argues the ALJ erred by finding at Step Three that he did not meet or equal Listing 12.05(B).[17] The undersigned disagrees.

As the ALJ recognized, to be found disabled under Listing 12.05(B), a claimant must demonstrate the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or

---

[17]    Woods claims "[t]he ALJ cannot made a finding that [he] has Intellectual Disability and also make a finding that [he] does not demonstrate adaptive deficits." (Doc. 13, PageID.521). Applying his own interpretation of the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), Woods appears to argue that the ALJ's finding he has Intellectual Disability necessitates a finding that he meets Listing 12.05B, since such a diagnosis would include a finding that a claimant has some deficits in adaptive functioning.

Not so. To meet Listing 12.05B, it is not enough to simply have some adaptive deficits, which is all the DSM-5 appears to require for a diagnosis of Intellectual Disability. Rather, those deficits must reach a marked or extreme level to qualify for Listing 12.05B. Moreover, there is no inconsistency in finding that Intellectual Disability was a severe impairment at Step Two—meaning only that it was not "so slight and its effect [not] so minimal [as to] clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience[,]" *McDaniel*, 800 F.2d at 1031—but that it did not cause marked or extreme adaptive deficits so as to qualify for Listing 12.05B at Step Three, which identifies "medical impairments … so severe that it is likely [a claimant] would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

> a. Understand, remember, or apply information (see 12.00E1); or
>
> b. Interact with others (see 12.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
> d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.05(B).

While noting that Woods's full scale IQ scores of 50 and 52 satisfied the first criteria, the ALJ found that Woods had less than marked limitation in each of the four mental functioning areas. More specifically, the ALJ found:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. Despite a diagnosis of moderate intellectual disability, the claimant testified that he graduated from high school, albeit with a certificate of completion. He stated that he has some problems with reading, writing and counting. During the hearing, the claimant testified that he drove to the hearing and has a current driver's license. On February 23, 2017, Dr. Donald W. Blanton performed a consultative psychological evaluation of the claimant (C1F). The mental status examination indicates that no psychomotor retardation or agitation was present and his judgment was fair for work and financial type decisions. Of note, the claimant reported that he stopped working at his last job because the plant shutdown (C2F). Thus, he stopped working due to the plant closing and not due to a functional limitation.

In interacting with others, the claimant has a mild limitation. In his function report, the claimant indicated that he does not spend time with others and reported problems with getting along with others (C7E). However, his friend reported no problem with getting along with family or others, noting that she spends a lot of time with him (C10E).

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant indication [sic] he has some problems maintaining attention with learning difficulties.

As for adapting or managing oneself, the claimant has experienced a mild limitation. Despite his mental impairments, the claimant has demonstrated the ability to follow instructions in a work environment. Moreover, his varied social interactions with his girlfriend and five children demonstrates his ability to appropriately interact with others. He also maintains a drivers license and frequently drives to the store.

(Doc. 11, PageID.59-60).

In arguing this claim of error, Woods largely invites the Court to impermissibly reweigh the evidence and substitute its judgment for the ALJ's. To the extent Woods argues that Dr. Blanton and Dr. Goff's medical opinions support a greater degree of limitation, the undersigned has already found the ALJ did not err in giving those opinions only partial weight. Woods cites various portions of the record that he argues show greater deficits in adaptive functioning, but none of it compels the conclusion that Woods had marked or extreme limitations in any of the four mental functioning areas, rather than simply mild or moderate limitations as the ALJ found. And Woods is wrong that the Listings flatly forbid the ALJ from considering evidence such as his ability to drive a car, engage in common everyday activities, and engage in work activity. Rather, the Listings simply make clear that such evidence is not automatically indicative of a lack of adaptive functioning

deficits, and that the ALJ, as always, must consider the record as a whole in making the Step Three determination. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.00(H)(3)(d)(i) ("The fact that you engage in common everyday activities, such as caring for your personal needs, preparing simple meals, or driving a car, will *not always* mean that you do not have deficits in adaptive functioning as required by 12.05B2. You may demonstrate both strengths and deficits in your adaptive functioning. However, a lack of deficits in one area does not negate the presence of deficits in another area. When we assess your adaptive functioning, *we will consider all of your activities and your performance of them*." (emphasis added)) & (e) ("The fact that you have engaged in work activity, or that you work intermittently or steadily in a job commensurate with your abilities, will *not always* mean that you do not have deficits in adaptive functioning as required by 12.05B2. When you have engaged in work activity, we need complete information about the work, and about your functioning in the work activity and work setting, before we reach any conclusions about your adaptive functioning. *We will consider all factors involved in your work history* before concluding whether your impairment satisfies the criteria for intellectual disorder under 12.05B. *We will consider your prior and current work history, if any, and various other factors influencing how you function.* For example, we consider whether the work was in a supported setting, whether you required more supervision than other employees, how your job duties compared to others in the same job, how much time it took you to learn the job duties, and the reason the work ended, if applicable." (emphasis added)).

In sum, Woods has shown no reversible error in the ALJ's Step Three finding that he did not meet or equal a listing. No reversible error having been shown in the Commissioner's final decision on the subject applications, that decision is due to be **AFFIRMED**.

### c.      Motion to Reopen Prior Applications

Representing that "[t]he ALJ failed to acknowledge, respond to, or explicitly rule on [his May 31, 2018] Motion to Reopen Prior Applications[,]" (Doc. 13, PageID.526), Woods's final claim of error is that the ALJ should have granted the motion. However, the undersigned agrees with the Commissioner that the Court does not have jurisdiction to address the merits of this issue.[18]

A "district court's jurisdiction in [Social Security appeals] is limited by the Social Security Act, and judicial review only exists over 'final decisions of the [Commissioner].'" *Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996) (per curiam) (alterations added) (quoting 42 U.S.C. § 405(g)).

> As a general matter, district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a "final decision" within the meaning of § 405(g). *Califano v. Sanders,* 430 U.S. 99, 107–09, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). Instead, a decision refusing to reopen an earlier application ordinarily is considered an interim decision not reviewable under § 405(g). *See, e.g., Loudermilk v. Barnhart,* 290 F.3d 1265, 1268 (11th Cir. 2002); *Sherrod v. Chater,* 74 F.3d 243, 245 (11th Cir. 1996).

*Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (per curiam).

---

[18] Woods did not address the Commissioner's argument on this point in his reply.

The Eleventh Circuit has "recognized an exception to this rule. Subject matter jurisdiction exists in those cases where a final decision on a prior 'social security claim is in fact reopened and reconsidered on the merits to any extent on the administrative level.' " *Id.* (quoting *Sherrod*, 74 F.3d at 245). *Accord Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 833 (11th Cir. 2016) (per curiam) (unpublished). "Also, judicial review may be had where the claimant raises a colorable constitutional issue…" *Sherrod*, 74 F.3d at 245.

Review of Woods's motion to reopen is not permitted in the present circumstances. Woods raises no colorable constitutional issue in this case, and he admits that the ALJ has not even "acknowledge[d], respond[ed] to, or explicitly rule[d] on" his motion to reopen, much less that the ALJ has in fact reopened and reconsidered the prior applications on the merits. To the extent the ALJ implicitly denied the motion, that decision is obviously unreviewable, and to the extent the motion remains pending, Woods cites no authority to suggest that a district court can compel the Commissioner to act on such a motion. Accordingly, Woods's request for the Court to review the merits of his motion to reopen is due to be dismissed without prejudice for lack of subject matter jurisdiction.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Woods's January 10, 2017 SSI application and January 12, 2017 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g), and that this action is **DISMISSED without prejudice** to the

extent Woods seeks review regarding his May 31, 2018 motion to reopen.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**